835 F.2d 879
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Stanley ATANASOFF and Cecilia Atanasoff, His Wife,
Defendants-Appellants.
 No. 86-1108.
 United States Court of Appeals, Sixth Circuit.
 Dec. 7, 1987.
 
 Before LIVELY, Chief Judge, ENGEL and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendants Stanley and Cecilia Atanasoff appeal from an order by the United States District Court for the Western District of Michigan granting summary judgment to the United States on its claim for ejectment.
 
 
 2
 The dispute in this case is over the location of the boundary between adjacent tracts of land owned by the government and the Atanasoffs. The government's tract and the Atanasoffs' tract are in Iron County, Michigan, in Section 30, Township 44 North, Range 36 West. Section 30 was previously owned by the C.M. Christiansen Company. In 1963 Christiansen sold the southeast quarter of the southeast quarter (SE-SE) of Section 30 to Henry and Ray Mitchell. In 1965 Christiansen sold the rest of Section 30 to the government. In 1971 the Mitchells sold SE-SE to the Atanasoffs. Thus, the Atanasoffs' land is in the southeast corner of Section 30, and the government's land is on the Atanasoffs' northern and western borders (NE-SE, NW-SE, and SW-SE).
 
 
 3
 In January 1975 the government informed the Atanasoffs that a cabin and certain other improvements on the western edge of SE-SE might be trespassing on the government's land in SW-SE. In 1982 the government conducted a survey that showed the cabin and improvements to be trespassing. The government then issued the Atanasoffs a special use permit that stated that they would be temporarily allowed to trespass pending negotiations for an exchange of land. The negotiations fell through, and the government sued for ejectment.
 
 
 4
 In the district court the government argued that the 1982 survey established the correct border. Defendants argued that the 1982 survey violated 43 U.S.C. Sec. 772, which authorizes the Secretary of the Interior to make "resurveys or retracements of the surveys of public lands" and provides that "no such resurvey or retracement shall be so executed as to impair the bona fide rights of any ... owner of lands affected by such resurvey or retracement." Defendants asserted that the government recognized their right to the disputed land in a sketch that the government made in 1974 when it granted defendants a right of way through the government's property to the defendants' property. The district court noted that an earlier Government Land Office survey had marked the borders of Range 36 West before it was divided into the parcels that these parties own. The court held that because the 1982 survey was the first survey of the interior of the southeast quarter of Section 30 (SE), the 1982 survey was not a "resurvey" under section 772, but an original survey of the boundary between SW-SE and SE-SE.
 
 
 5
 On appeal defendants argue that the 1982 survey was a resurvey because the southeast corner of Section 30, which is also the southeast corner of SE-SE, was marked in the earlier GLO survey. Defendants assert that marking the border between SW-SE and SE-SE depends on finding the southeast corner of SE-SE and that there is a question of fact whether the corner used in the 1982 survey is the same as the corner in the original survey.
 
 
 6
 The government argues that even if the 1982 survey was a resurvey and even if it was inaccurate, the judgment should be affirmed because section 772 does not create a private right of action. In support the government cites Block v. North Dakota, 461 U.S. 273 (1983), and Fadem v. United States, 791 F.2d 1381 (9th Cir.1986). In Block the Supreme Court held that the Quiet Title Act, 28 U.S.C. Sec. 2409a, is "the exclusive means by which adverse claimants [can] challenge the United States' title to real property." 461 U.S. at 286. In Fadem the plaintiffs argued that Block does not apply to claims brought under 43 U.S.C. Sec. 772 that a resurvey was inaccurate. The court rejected the argument for two reasons. First, the court read the Quiet Title Act and Block as applying to "all boundary disputes with the government." Second, the court observed that section 772 provides no explicit cause of action, and held that there was "no indication in either the legislative history or subsequent interpretation of [section 772] that Congress intended by its passage to create a private enforcement remedy." 791 F.2d at 1383.
 
 
 7
 Even if there were a question of fact whether the 1982 survey correctly identified the southeast corner of Section 30, this would not be grounds for reversal. The government has accurately cited the law that the Quiet Title Act is the sole means for challenging the survey. Thus, the district court did not err in relying on the survey.
 
 
 8
 The district court also ruled that the defendants could not establish ownership of the disputed land by adverse possession. The Supreme Court held in United States v. California, 332 U.S. 19, 40 (1947):
 
 
 9
 The Government, which holds its interests ... in trust for all the people, is not to be deprived of those interests by the ordinary court rules designed particularly for private disputes over individually owned pieces of property; and officers who have no authority at all to dispose of Government property cannot by their conduct cause the Government to lose its valuable rights by their acquiescence, laches, or failure to act.
 
 
 10
 See also Sweeten v. United States Dept. of Agriculture Forest Service, 684 F.2d 679, 682 (10th Cir.1982). On appeal defendants cite a Michigan statute in support of their claim to title by adverse possession:
 
 
 11
 No action for the recovery of any land shall be commenced by or on behalf of the people of this state unless it is commenced within 15 years after the right or title of the people of this state in the land first accrued or within 15 years after the people of this state or those from or through whom they claim have been seised or possessed of the premises, or have received the rents and profits, or some part of the rents and profits, of the premises.
 
 
 12
 Mich. Compiled Laws Sec. 600.5281(1); Mich.Stat.Ann. Sec. 27A.5821(1) (emphasis added). Obviously this law does not create a private right of action, and in any event state law cannot create property claims against the United States without the latter's consent.
 
 
 13
 For the reasons stated above, we AFFIRM the judgment of the district court.
 
 
 14
 BOGGS, Circuit Judge, concurring.
 
 
 15
 I agree with the decision reached by the court based on the exclusivity of the Quiet Title Act, 28 U.S.C. Sec. 2409a, as a means for the resolution of boundary disputes with the government. I write separately only to emphasize the tenuousness of the government's position aside from this procedural bar.
 
 
 16
 This is not the conventional boundary dispute where a movement of the boundary line results in more land to one party and less land to the other. Rather, there is agreement that the Atanasoffs purchased 40 acres (a quarter of a quarter section) through a chain of title deriving from the Christansen Company, the same party that subsequently sold all the surrounding property to the government. The issue is thus only the location of the 40 acres within the larger tract originally owned by the Christiansen Company. On the summary record before us, there seems to be no doubt that in the minds of all the parties involved at the times of these transactions and to the surrounding community, the Atanasoffs are correct, based on the remnants of the original 19th century GLO survey, that their land is where they contend it is. The area now disputed by the government had been occupied on a rental basis by the Atanasoffs' predecessor in title since at least 30 years ago. The section corner understood to have been established by the GLO survey marked the southeast corner of their 40 acres and the remainder of the boundaries could be ascertained precisely by conventional surveying.
 
 
 17
 Now, however, the Atanasoffs' house and other valuable recreation property, including stream access, are located in the extreme western part of the property the Atanasoffs thought they owned. By "correcting" the survey to place the section line further to the east, the government is able to make a "land grab" of the more valuable part of the Atanasoffs' property, while leaving them with other land on the eastern side of their original property to fill up the 40 acres.
 
 
 18
 This result is apparently correct in strict geographic mensuration. The understanding of the old survey was incorrect, so that the corner of that survey was not the correct corner, but instead lay well within the Atanasoffs' property. However, despite the actions of the government in previously indicating that it did not consider the Atanasoffs' cabin on government property, the court is correct that the government is not bound by adverse possession. The Atanasoffs' failure was in not challenging the government's grab by means of an action to quiet title.